**McCUNE LAW GROUP**

McCUNE • WRIGHT • AREVALO • VERCOSKI
KUSEL • WECK • BRANDT APC

December 19, 2024

**VIA MAIL**

**Walt Disney Parks and Resorts U.S., Inc.**
500 South Buena Vista Street
Burbank, CA 91521

**RE: NOTICE OF VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CLRA)**

To Whom It May Concern,

      This letter is written on behalf of our client, Trisha Malone, and other similarly aggrieved guests who were required to agree to Walt Disney Parks and Resorts U.S., Inc.'s ("Disney") Terms and Conditions in order to access Disability Access Service (DAS) accommodations. This notice is provided pursuant to the Consumer Legal Remedies Act (CLRA), California Civil Code § 1750 et seq., and details Disney's violations of the CLRA through the imposition of restrictive, misleading, and unconscionable terms that deny individuals with disabilities their rights and remedies under California law.

      The CLRA prohibits deceptive and unfair business practices that harm consumers. Disney's Terms and Conditions for DAS explicitly state that the service is "*intended to accommodate only Guests who, due to a developmental disability like autism or similar, are unable to wait in a conventional queue for an extended period of time.*" This language misrepresents the scope of DAS by excluding individuals with physical, sensory, or other disabilities, despite Disney's legal obligation to provide accommodations to all disabled guests under the Americans with Disabilities Act (ADA) and Unruh Act. By falsely limiting DAS eligibility to certain types of disabilities, Disney is misrepresenting the characteristics, uses, and benefits of the service in violation of California Civil Code § 1770(a)(5).

      Further, the Unruh Civil Rights Act, California Civil Code § 51 et seq., guarantees individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages, and accommodations offered by business establishments in California. By restricting the availability of its Disability Access Service (DAS) solely to individuals with developmental disabilities, such as autism or similar conditions, Disney imposes eligibility criteria that unlawfully exclude individuals with other disabilities, including physical impairments, from accessing equal accommodations

3281 E. Guasti Road, Suite 100, Ontario, CA 91761   ■   Phone: 909.557.1250   Fax: 909.557.1275   ■   McCuneWright.com

ORANGE COUNTY
Irvine, CA

INLAND EMPIRE - EAST
San Bernardino, CA

MIDWEST
Edwardsville, IL

EAST COAST
Newark, NJ

The Unruh Act incorporates the Americans with Disabilities Act (ADA), including its prohibition on eligibility criteria that tend to screen out individuals with disabilities. Under 42 U.S.C. § 12182(b)(2)(i), it is unlawful for a business to impose eligibility criteria that "screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary."

By explicitly limiting DAS accommodations to guests with developmental disabilities who are "unable to wait in a conventional queue for an extended period of time," Disney has unlawfully screened out individuals with physical disabilities that similarly prevent them from standing or waiting in long lines. For example, individuals with mobility impairments, chronic pain conditions, cardiac issues, or other physical disabilities may require similar accommodations but are excluded under Disney's restrictive eligibility criteria.

Disney cannot demonstrate that limiting DAS accommodations to individuals with developmental disabilities is necessary for the provision of its services. Disney should provide equal access to all individuals whose disabilities prevent them from using conventional queues, regardless of whether their disabilities are developmental, physical, or otherwise. The restriction is arbitrary and discriminatory, in violation of the Unruh Act.

Further, Disney's alternative accommodations to DAS are deceptively advertised accommodations, when in reality they are anything but. First, Disney's Attraction Queue Re-Entry or Meet-Up accommodation is a foreseeably harmful alternative for guests with disabilities who cannot tolerate traditional queues. Requiring guests to exit and re-enter the queue or wait outside creates undue physical and emotional stress, particularly for individuals with mobility challenges, sensory sensitivities, or medical conditions exacerbated by physical strain or disorientation. The process imposes logistical burdens, such as frequent coordination with cast members and one's party, which can be challenging for individuals with communication impairments or limited access to reliable devices. It also introduces safety risks, including the potential for separation in crowded areas, disorientation, and confusion during re-entry. For solo travelers or small groups, the accommodation is even less feasible. By forcing guests to manage these burdensome logistics, this option fails to provide equitable access and instead stigmatizes and disadvantages individuals with disabilities, falling short of a reasonable and effective accommodation.

Disney's Rider Switch accommodation is also an unreasonable and inadequate alternative for guests with disabilities who cannot tolerate traditional queues. The requirement for one party to wait outside the queue while the other rides fails to

accommodate the core needs of disabled individuals who may be unable to stand or wait for extended periods due to mobility impairments, chronic pain, sensory sensitivities, or other disabling conditions. For example, the waiting period for Party B can be lengthy, leaving the disabled guest in discomfort or at risk of exacerbating their condition. Furthermore, the process places undue logistical and emotional burdens on guests, requiring precise coordination with cast members and their group, which can be especially challenging for individuals with cognitive impairments, communication difficulties, or sensory overload. Additionally, limiting Party B to a maximum of two riders unfairly restricts the experience of larger groups traveling with disabled individuals, creating an inequitable experience. The requirement to re-enter the attraction separately from the rest of the party also isolates the disabled guest, stigmatizing their disability and further reducing their enjoyment of the attraction. For solo travelers or small groups, the Rider Switch accommodation may not even be feasible, effectively denying access altogether. This alternative fails to address the fundamental barriers faced by disabled individuals, making it an unreasonable and potentially harmful substitute for the Disability Access Service (DAS).

Disney's Location Return Time accommodation is another inadequate and inequitable solution for guests with physical restrictions, as it imposes unnecessary burdens and fails to provide meaningful access. Requiring guests to request this accommodation from cast members in crowded, public settings forces individuals to disclose their disabilities, causing potential embarrassment and emotional distress, especially for those with sensory or communication challenges. Limiting this accommodation to Disneyland Park, with no equivalent in Disney California Adventure Park, creates a stark disparity that denies equal access across the resort. Additionally, assigning return times comparable to the standby wait fails to account for the specific needs of individuals unable to endure prolonged waits due to physical pain, fatigue, or other health conditions. The requirement to navigate to auxiliary entry points further complicates access, introducing logistical challenges and safety risks for individuals with mobility impairments or vision loss. These barriers undermine the goal of inclusion, making the Location Return Time accommodation an unreasonable and ineffective alternative for providing equitable access to attractions.

Additionally, Disney advertises DAS as a program designed to meet the accessibility needs of disabled guests but imposes vague and subjective requirements, such as requiring guests to participate in an "individualized discussion" to justify their need for accommodations. This process lacks transparency and often results in the denial of services to individuals who qualify for accommodations under state and federal law. Such practices constitute advertising goods or services with the intent not to sell them as advertised, in violation of California Civil Code § 1770(a)(9).

Disney's Terms and Conditions further violate California Civil Code § 1770(a)(14) by requiring guests to waive their legal rights as a condition for accessing DAS

accommodations. Specifically, guests must agree that "*any lawsuit I may file, or participate in, challenging this decision, the individualized discussion, or the overall process itself, shall be conducted only on an individual basis and not as a plaintiff or class member in a purported class, consolidated or representative action or proceeding.*" This provision unlawfully limits consumers' ability to pursue class actions or other representative claims, which are essential for addressing systemic discrimination and ensuring accountability. Such waivers are void as a matter of public policy and constitute a clear violation of the CLRA.

Class action waivers in consumer contracts are unconscionable when disputes involve predictably small amounts of damages and when the party with superior bargaining power has engaged in a scheme to deliberately deprive large numbers of individuals of their rights. See *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 923. (2015). In *Sanchez* the California Supreme Court held that,

> The anti-waiver provision is found in Civil Code section 1751: "*Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void*." Civil Code section 1780 permits the consumer damaged by certain enumerated practices to seek various remedies including damages and injunctive relief. Civil Code section 1781, subdivision (a) provides: "*Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.*" Thus, class actions are among the provisions of the CLRA that may not be waived.

*Id.*

Here, Disney's class action waiver effectively prevents aggrieved parties from banding together to address systemic violations, such as the misrepresentation of DAS eligibility and the improper denial of accommodations. This waiver disproportionately harms individuals who would otherwise seek relief under the Unruh Act but lack the resources to pursue individual litigation for relatively small statutory damages, allowing Disney to continue discriminatory practices without meaningful accountability.

Disney's naked class action waiver does not qualify as an arbitration agreement under the FAA because it lacks the essential features of arbitration. The waiver contains no provision for arbitration, mediation, or any alternative dispute resolution process. Unlike arbitration agreements, which provide a forum for resolving disputes, Disney's waiver simply eliminates the right to collective actions without offering an alternative. This deceptive naked class action waiver provides no alternative dispute resolution mechanism, such as arbitration, and serves solely to falsely shield Disney from accountability for systemic discrimination and misconduct. These terms are coercive, discriminatory, one-sided, and contrary to public policy.

Moreover, Disney's unilateral right to change the DAS Terms and Conditions without notice imposes an unconscionable burden on guests. California Civil Code § 1770(a)(19) prohibits businesses from inserting unconscionable provisions into consumer agreements. By reserving the right to modify the terms at any time, Disney creates a one-sided agreement that leaves disabled guests vulnerable to sudden and unpredictable changes, effectively stripping them of any meaningful recourse. This provision is excessively oppressive and violates fundamental principles of fairness and equity protected under California law.

These practices have caused harm to our client and other similarly situated guests. The restrictive and misleading eligibility criteria for DAS force individuals with disabilities to justify their medical conditions in non-confidential settings, leading to embarrassment, emotional distress, and a denial of accommodations they are entitled to under the law. The requirement to agree to a waiver of legal rights further denies them access to justice and remedies for systemic discrimination. The unilateral modification clause compounds this harm by creating uncertainty and undermining trust in Disney's accommodation process.

To comply with the CLRA and remedy these violations, Disney must take immediate action to revise its DAS Terms and Conditions. Restricting DAS eligibility to only guests with developmental disabilities must be removed to reflect Disney's obligation to accommodate all qualifying disabilities. The waiver of class action and representative action rights must be eliminated to restore individuals' ability to pursue collective remedies. The unilateral modification clause must also be removed, and any future changes to the terms must be communicated clearly and require affirmative consent from affected individuals.

If these violations are not corrected within 30 days of receipt of this notice, legal action will be initiated under the CLRA, including claims for actual damages, injunctive relief, restitution, statutory damages, and attorneys' fees.

Very truly yours,

McCune Law Group, McCune Wright Arevalo Vercoski Kusel Weck Brandt, APC

*Michele M. Vercoski*

Michele M. Vercoski

MMV/da