1  Marjorie C. Soto Garcia (SBN 313290)
2  mcsotogarcia@mwe.com
   **McDERMOTT WILL & SCHULTE LLP**
3  2049 Century Park East, Suite 3200
4  Los Angeles, CA  90067-3206
   Telephone:   +310 277 4110
5
6  Kerry Alan Scanlon (admitted *pro hac vice*)
   kscanlon@mwe.com
7  Jeremy M. White (admitted *pro hac vice*)
8  jmwhite@mwe.com
   **McDERMOTT WILL & SCHULTE LLP**
9  500 North Capitol Street, NW
10 Washington, D.C. 20001-1531
   Telephone:   +202 756 8000
11
12 Attorneys for Defendant
   WALT DISNEY PARKS AND
13 RESORTS U.S., INC.
14
15            **UNITED STATES DISTRICT COURT**
16            **CENTRAL DISTRICT OF CALIFORNIA**

17 | TRISHA MALONE, JASON ARBALLO, | CASE NO. 8:25-cv-00562-SRM-DFM |
   | STACY HORNE, and MONICA | |
18 | GONZALEZ, individually and on behalf of | **DEFENDANT WALT DISNEY** |
19 | all others similarly situated, | **PARKS AND RESORTS U.S., INC.'S** |
   | | **NOTICE OF MOTION AND** |
20 | Plaintiffs, | **MOTION TO STAY DISCOVERY;** |
   | | **MEMORANDUM OF POINTS AND** |
21 | v. | **AUTHORITIES; [PROPOSED]** |
   | | **ORDER** |
22 | WALT DISNEY PARKS AND RESORTS | |
23 | U.S., INC., DOES 1 through 50, INSPIRE | Judge:      Hon. Serena Murillo |
   | HEALTH ALLIANCE, LLC, DOES 51-100 | Date:       October 8, 2025 |
24 | inclusive, | Time:       1:30 p.m. |
   | | Ctrm:       5D |
25 | Defendants. | Action Filed:  February 10, 2025 |
26 | | Action Amended:  April 7, 2025 |
27
28

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

1   **TO THE HONORABLE COURT, ALL PARTIES AND THEIR RESPECTIVE**

2   **COUNSEL OF RECORD:**

3          **PLEASE TAKE NOTICE** that on October 8, 2025, or as soon thereafter as the

4   matter may be heard, in Courtroom 5D of the above-captioned Court, located at 350

5   W. First Street, Los Angeles, CA 90012, defendant Walt Disney Parks and Resorts

6   U.S., Inc. ("WDPR") will and hereby does move the Court to stay discovery pending

7   the Court's ruling on WDPR's motion to dismiss.

8          This Motion is based upon this Notice of Motion, the attached Memorandum of

9   Points and Authorities, the pleadings, records and files in this action, and upon such

10  further oral or documentary evidence and argument as may be presented at or before

11  the hearing and any other matter the Court may deem appropriate.

12         This Motion is made following the conference of counsel pursuant to L.R. 7-3

13  which took place on August 18, 2025.

14  ///

15  ///

16   Dated:  August 27, 2025          **McDERMOTT WILL & SCHULTE LLP**

17                          By:   */s/ Kerry Alan Scanlon*

18                                Kerry Alan Scanlon
                                  Jeremy M. White
19                                Marjorie C. Soto Garcia

20
                                  *Attorneys for Defendant Walt Disney Parks and*
21                                *Resorts U.S., Inc.*

22

23

24

25

26

27

28

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

In the face of Walt Disney Parks and Resorts U.S., Inc.'s ("WDPR") pending motion to dismiss the entire amended complaint with prejudice—the second motion to dismiss WDRR has filed in this case—Plaintiffs have now served voluminous discovery requests on WDPR that would require the company to incur significant time and expense in a case that may soon be dismissed.  These discovery requests, which include 55 document requests, 47 requests for admission and 19 interrogatories (not including subparts), seek discovery on a myriad of topics (many of which are neither relevant to Plaintiffs' claims nor proportional to the needs of the case), including both class and merits issues.  Plaintiffs should not be permitted to assert baseless claims and then utilize the discovery process to engage in a costly and burdensome fishing expedition.  Moreover, there is no need to jump the gun before the Court has decided if any of the claims should remain, given that class discovery does not close for more than five months and merits discovery is not required to be completed until August 19, 2026.  Due to the potentially unnecessary financial burden on WDPR and the lack of prejudice to Plaintiffs,[1] this motion to stay should be granted.

## II.    FACTUAL BACKGROUND

On April 7, 2025, Plaintiffs amended their complaint which includes claims for alleged violations of the Unruh Civil Rights Act ("Unruh Act"), Consumer Legal Remedies Act ("CLRA"), Confidentiality of Medical Information Act ("CMIA"), Fair Employment and Housing Act ("FEHA"), Unfair Competition Law and California Labor Code, as well as common law claims for breach of confidentiality, invasion of privacy and breach of duty of care.  Doc. 24, Am. Compl. ¶¶ 106-248 (Causes of Action 1 through 11).  On April 21, 2025, WDPR moved to dismiss Plaintiffs' amended complaint with prejudice and/or each of the causes of action, and strike

---

[1]  WDPR has offered to consent to extending the deadlines if, in light of the Court's ruling on the motion to dismiss, that becomes necessary.

Plaintiffs' non-CLRA class claims and allegations against WDPR.  Doc. 29, WDPR Mot. to Dismiss.[2]  WDPR's motion to dismiss was fully briefed on July 10, 2025.  Doc. 37, Pls.' Opp.; Doc. 42, WDPR's Reply.  Approximately two weeks later, Plaintiffs served their First Set of Written Discovery Requests which includes 47 Requests for Admission, 19 Interrogatories and 55 Requests for Production of Documents, for a total of 121 discovery requests.  Exhibit 1, Pls.' Discovery Requests.  WDPR's response is due on August 27, 2025.  As the parties acknowledged in the Joint Rule 26(f) Report, "Defendants intend to move to stay discovery if Plaintiffs try to seek discovery before the resolution of the pending motion to dismiss."  Doc. 41, Joint Rule 26(f) Report at 12.  Despite this acknowledgement, Plaintiffs did not confer with Defendants prior to serving their discovery requests.  Therefore, engaging in the discovery process at this time will unnecessarily impose considerable time and expense on the parties and the Court unless this action is stayed pending resolution of WDPR's motion to dismiss.

## III.  THERE IS NO DISPUTE THAT THE PENDING MOTION TO DISMISS, IF GRANTED, WOULD DISPOSE OF THE ENTIRE CASE

This Court has the discretion to stay discovery pending resolution of WDPR's fully-dispositive motion to dismiss, particularly where, as here, the stay can promote judicial economy and reduce prejudice.  That is because "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. American Co.*, 299 U.S. 248, 249 (1936).  In exercising that power, California district courts recognize that "[t]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery" and that "discovery at the pleading stage is only appropriate where factual issues are raised by

---

[2]  At the same time, co-defendant, Inspire Health Alliance, LLC ("Inspire") also moved to dismiss the amended complaint.  *See* Doc. 28.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

a Rule 12(b) motion." *Quezambra v. United Domestic Workers of Am. AFSCME Loc.
3930*, 2019 WL 8108745, at *2 (C.D. Cal. Nov. 14, 2019) (internal citations omitted).
Each of the causes of action in Plaintiffs' amended complaint can be dismissed as a
matter of law.  Courts in this district apply a two-part test which establishes that a stay
of discovery is appropriate if (1) "the pending motion [is] potentially dispositive of the
entire case, or at least dispositive on the issue at which discovery is aimed," and (2)
"the pending, potentially dispositive motion can be decided absent additional
discovery." *Quezambra*, 2019 WL 8108745, at *2; *SSI (U.S.), Inc. v. Ferry*, 2021 WL
4812952, at *3 (C.D. Cal. May 25, 2021). This test is easily met here.

The Court's decision on WDPR's motion to dismiss will determine whether any
part of this action moves forward.  If, for example, the Court grants the motion as to
the CLRA claim and finds the class action waiver to be enforceable, there would be no
class claims or need for time-consuming and expensive class discovery.  Moreover,
the Court can decide the pending motion to dismiss without any discovery, as further
demonstrated by the fact that Plaintiffs did not claim any need for discovery in their
opposition to the motions to dismiss.  Under these circumstances, a stay of all
discovery is warranted.  *See, e.g.*, *Quezambra*, 2019 WL 8108745, at *2 (staying
discovery pending resolution of defendants' motions to dismiss because they "are
potentially dispositive of the entire case" and "it appears that the Court can resolve
[them] without requiring further discovery"); *SSI (U.S.), Inc.*, 2021 WL 4812952, at
*3 (granting stay of discovery where "the pending motion to dismiss is indeed
potentially dispositive because it seeks to dismiss all claims" and "can be decided
absent additional discovery"); *Crandall v. Teamsters Local No. 150*, 2025 WL
1652063, at *1 (E.D. Cal. June 11, 2025) (staying discovery where "Defendants'
pending motion for judgment on the pleadings is dispositive of the entire case . . . the
pending motion does not require additional discovery for its resolution"); *Hamilton v.
Rhoads*, 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011) (staying discovery

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

because defendants' "motion to dismiss, if meritorious, is potentially dispositive of the case . . . [and] discovery is unnecessary for resolution of the motion").

## IV.    WDPR'S MOTION TO DISMISS IS LIKELY TO SUCCEED

A stay of discovery is particularly reasonable here because WDPR's motion to dismiss not only has merit, but is also likely to succeed.  Of course, "myriad courts in this district [ ] decline" to take a "preliminary peek" at the merits of a pending motion to dismiss when evaluating whether to stay discovery, focusing instead on the two-factor test discussed above (which is met here).  *See*, *e.g.*, *SSI (U.S.), Inc.*, 2021 WL 4812952, at *3 (collecting cases).  But even if the Court decided to take a "preliminary peek" at the merits (which is not required), it would find that an order staying all discovery is appropriate in this case.

WDPR's well-supported motion to dismiss explains how Plaintiffs' claims under the Unruh Act fail as a matter of law because Plaintiffs' only cognizable claim is based on the reasonable modification provision in Title III of the Americans with Disabilities Act ("ADA"), and Plaintiffs have not and cannot allege facts showing that they required any modification to WDPR's existing accommodation programs in order to access the Disneyland Resort ("Disneyland") theme parks.  *See* Doc. 42, WDPR Mot. at 4-10, citing *e.g.*, *Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, 425 F. Supp. 3d 1234, 1244 (C.D. Cal. 2019) (where plaintiff has already received a reasonable accommodation allowing him to access the attractions at Disneyland, his request for priority line access allowing him to skip the regular line at each attraction is not required under the ADA because 'facilities are not required to make the preferred accommodation of plaintiffs' choice.'") (internal quotations omitted).

Plaintiffs' other statutory claims (CLRA, CMIA and FEHA) similarly fail because they simply do not apply to a theme park's program specifically designed to accommodate guests whose unique disability-related needs require such accommodation in order to be able to experience the park's attractions.

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

- The CLRA does not cover free accommodation programs like DAS as a matter of law.  And even if it did, the allegations in Plaintiffs' amended complaint show that WDPR expressly informed Plaintiffs about all aspects of the DAS program before their visits, meaning there is no set of facts Plaintiffs can allege supporting a claim that WDPR misrepresented the DAS program to anyone, which is necessary to state a claim under the CLRA.  *See Bezirganyan v. BMW of N.Am., LLC*, 562 F. Supp. 3d 633, 639-40 (C.D. Cal. 2021) (dismissing plaintiff's CLRA claim without leave to amend because a company cannot violate the CLRA by making accurate statements about its services).

- The CMIA only applies to healthcare providers and their contractors and third-party administrators, not theme parks.  *See Oddei v. ScanSTAT Technologies, LLC*, 2022 WL 17538747, at *1 (9th Cir. Dec. 8, 2022) (affirming dismissal of CMIA claim because complaint contained no allegations that defendant was a "medical group, independent practice association, pharmaceutical benefits manager, or medical service organization").  Moreover, Plaintiffs (who were <u>not</u> patients of WDPR) fail to allege any unauthorized disclosure of "medical information" that is actionable under the statute.  *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435 (2014) (holding that to prove a violation of the CMIA, a plaintiff must demonstrate *both* that intentionally-disclosed information was "individually identifiable" *and* that it included a patient's "medical history, mental or physical condition, or treatment").

- Plaintiffs' FEHA claims are barred because that statute applies to individuals bringing claims related to their employment or housing status, not to theme park patrons who do not live at the park and who were not working at the time they visited the park.  *See* Cal. Code Regs. tit. 2 § 11008(c) (2013) (defining

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

"employee" as "[a]ny individual *under the direction and control of an employer*[.]") (emphasis added).

Finally, Plaintiffs' non-CLRA class claims are completely barred by an enforceable class action waiver. In short, a "preliminary peek" at WDPR's motion to dismiss demonstrates that Plaintiffs' amended complaint is more than likely to be dismissed, and should be dismissed, in its entirety. A stay of discovery is warranted here.

## V.    THE BALANCE OF INTERESTS WEIGHS IN FAVOR OF STAYING DISCOVERY

A stay of discovery is also warranted because Plaintiffs anticipate taking multiple depositions (including of current and former employees of WDPR and Inspire) and engaging in expert discovery. *See* Doc. 41, Joint Rule 26(f) Report at 10, 14. Plaintiffs have already served overly broad, burdensome, and unnecessary requests that will force both defendants to expend considerable time and resources. The following examples illustrate that these requests—which include seeking documents from numerous employees over a 12-year period—will require a substantial amount of work and significant costs:

### Request for Production No. 1

All DOCUMENTS RELATING TO the policies, procedures, rules, and guidelines for the DAS program from its inception [October 2013] to the present.

### Request for Production No. 2

All training materials, manuals, scripts, flowcharts, or guides provided to any WDPR or INSPIRE employee, agent, or contractor responsible for evaluating guest requests for DAS.

**Request for Production No. 7**

All non-privileged COMMUNICATIONS between WDPR and INSPIRE RELATING TO the administration, evaluation, or modification of the DAS program.

**Request for Production No. 19**

All COMMUNICATIONS to WDPR employees regarding the DAS program and their eligibility to use it when visiting the park as a patron.

**Request for Production No. 46**

All COMMUNICATIONS, including but not limited to meeting minutes, memoranda, and emails, concerning the decision-making process to modify the DAS policy in 2024 to "stem the abuse of DAS".

**Request for Production No. 51**

All DOCUMENTS, including guest complaints or feedback, received after the 2024 policy change that relate to the effectiveness and fairness of the new DAS eligibility criteria.

**Special Interrogatory No. 8**

For each DAS application interview conducted since June 18, 2024, IDENTIFY all persons present during the interview, including the applicant, any companions, all WDPR employees, and all INSPIRE employees or agents.

**Special Interrogatory No. 13**

Describe all data YOU maintain relating to guest communications (including emails to disability.services@Disneyland.com, guest.services@Disneyland.com, or any executive) concerning DAS denials since June 18, 2024, and state the total number of such communications YOU have received.

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

1     Although these discovery requests are subject to objection, WDPR should not
2  be required to expend the enormous amount of time and effort necessary to respond to
3  discovery requests like these, particularly at this early stage in the litigation with a
4  pending motion to dismiss the entire case.  *See Arcell v. Google LLC*, 2022 WL
5  16557600, at *1 (N.D. Cal. Oct. 21, 2022) (staying discovery where defendant's
6  motion to dismiss was "potentially dispositive of the entire case," and because "good
7  cause to stay discovery [exists when the stay] will promote efficiency and avoid undue
8  burden to Defendants" in cases where discovery "tends to be broad, time-consuming
9  and expensive").  If the Court dismisses a non-meritorious claim before discovery has
10  begun, unnecessary costs to the litigants and to the court system are avoided.  Even if
11  WDPR objects to parts of Plaintiffs' written discovery requests, it does not diminish
12  the fact that the proposed discovery is wide-ranging, multi-faceted and extremely
13  burdensome, necessitating a staggering amount of work that could all be in vain.
14     Finally, a stay of discovery is reasonable because there will be no prejudice to
15  Plaintiffs while WDPR's motion is being decided.  In fact, during the parties' meet-
16  and-confer, the only prejudice that counsel for Plaintiffs could identify from a stay of
17  discovery was that they would have less time for class discovery if the deadlines were
18  not extended.  *See* Declaration of Jeremy White at ¶ 4.  However, WDPR agreed to
19  address this issue and avoid any purported prejudice by consenting to an extension of
20  the deadlines for the length of any stay granted by this Court.  *Id*. ¶ 5.  Because
21  Plaintiffs' discovery would still be available following the stay, particularly in light of
22  the current discovery deadlines, no prejudice would befall Plaintiffs.  *Salas v.
23  Whirlpool Corp.*, 2024 WL 6050054, at *1 (C.D. Cal. Apr. 1, 2024) (staying discovery
24  because "both tests are satisfied, and other factors (for example lack of harm to
25  Plaintiff, discovery deadlines can be adjusted—which the Court expects the parties' to
26  cooperate about) counsel in favor of the relatively brief discovery stay pending
27  resolution of the Motions to Dismiss").  If this Court does not grant Defendants'
28

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

motions to dismiss, or only grants them in part, the litigation of any remaining claims can easily resume where it left off with no prejudice to either party.

In these circumstances, the balance of interests weighs in favor of a stay. *See Activision Publ'g, Inc. v. Warzone.com, LLC*, 2022 WL 22960724, at *2 (C.D. Cal. Feb. 15, 2022) (noting that "the balance of the hardships weighs in favor of granting [a] Motion to Stay" when "granting the stay would potentially avoid the need for time consuming and costly discovery and related motion practice, furthering interests of judicial economy and efficiency," particularly when a plaintiff "fails to demonstrate it would suffer any harm based on a delay in discovery"). Therefore, even if the Court examined other factors to determine if a stay is warranted,[3] WDPR has demonstrated that this motion should be granted.

## VI.    **CONCLUSION**

For all the foregoing reasons, WDPR respectfully requests that the Court grant its motion to stay discovery in this case pending a ruling on WDPR's motion to dismiss Plaintiffs' amended complaint with prejudice.

Dated:  August 27, 2025           **McDERMOTT WILL & SCHULTE LLP**

By:    */s/ Kerry Alan Scanlon*
_____
Kerry Alan Scanlon
*Attorneys for Defendant Walt Disney Parks and Resorts U.S., Inc.*

---

[3]  Other courts balance the following factors in determining whether a stay is warranted: "(1) the interests of the plaintiff in proceeding expeditiously with the civil action and the potential prejudice to plaintiffs of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Top Rank, Inc. v. Haymon*, 2015 WL 9952887, at *1 (C.D. Cal. Sep. 17, 2015).

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 1

Michele M. Vercoski [Bar No. 244010]
mmv@mccunelawgroup.com
Yasmin N. Younessi [Bar No. 331327]
ynv@mccunelawgroup.com
Gavin P. Kassel [Bar No. 284666]
sboffice@mccunelawgroup.com
**MCCUNE LAW GROUP, APC**
18565 Jamboree Road, Ste. 550
Irvine, CA 92612
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA MALONE, JASON ARBALLO, STACY HORNE, and MONICA GONZALEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>WALT DISNEY PARKS AND RESORTS U.S., INC., DOES 1 through 50, INSPIRE HEALTH ALLIANCE, LLC, DOES 51-100 inclusive,<br>                    Defendants. | Case No.: 8:25-cv-00562-SRM-DFM<br><br>**PLAINTIFFS' FIRST SET OF SPECIAL INTERROGATORIES (FRCP 33) TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC.**<br><br>**SET ONE** |

**PROPOUNDING PARTY:**  PLAINTIFFS', TRISHA MALONE, JASON ARBALLO, STACY

HORNE, and MONICA GONZALEZ

**RESPONDING PARTY:**  DEFENDANT, WALT DISNEY PARKS AND RESORTS U.S.,

INC.

**SET NUMBER:**        ONE (1)

SPECIAL INTERROGATORIES-WDPR SET 1 - 1

Pursuant to Rules 33 and 26 of the Federal Rules of Civil Procedure, Plaintiffs request that Defendant WDPR answer the following interrogatories separately and fully in writing and under oath within thirty (30) days of service.

## I. PRELIMINARY STATEMENT

**1. Authority & Scope.**  These Special Interrogatories are propounded under Federal Rules of Civil Procedure 26 and 33 and the Court's Scheduling Order.  They seek all discoverable information within Defendant WALT DISNEY PARKS AND RESORTS U.S., INC. possession, custody, or control, including knowledge held by current or former officers, employees, agents, or third-party vendors.

**2. Numerical Compliance.**  Counting each discrete sub-part, this set contains nineteen (19) interrogatories—well below the twenty-five-interrogatory limit of Rule 33(a)(1).

**3. Duty to Respond, Verify, and Supplement.**  Written, verified answers (or specific objections) must be served within thirty (30) days of service.  The responses must be signed under oath by a person with knowledge, and any objections must be signed by counsel.  Defendant must seasonably supplement or correct its responses under Rule 26(e).

**4. Definitions Incorporated.**  Capitalized terms carry the meanings assigned in Section II (Definitions).  References to "Initial Disclosure Witnesses" and "Initial Disclosure Documents" are to the persons and categories listed in Plaintiff's July 10, 2025, Rule 26(a)(1) Initial Disclosures.

**5. Form of Answers.**  For each Interrogatory, set forth the text of the Interrogatory in full, followed by the complete answer.  If Defendant cannot answer in full, state the part answered and the reasons for the inability to answer the remainder.

**6. Meet-and-Confer.** Before moving to compel, the parties shall strictly comply with Local Rules 37-1 and 37-2.

## II. DEFINITIONS

1. **"YOU"** or **"WDPR"** refers to Defendant Walt Disney Parks and Resorts U.S., Inc., including all of its current and former parents, subsidiaries, affiliates, divisions, officers, directors, employees, agents, attorneys, and any other persons or entities acting on its behalf.

2. **"COMPLAINT"** refers to the First Amended Class Action Complaint filed in this action on April 7, 2025.

3. **"DAS"** refers to the Disability Access Service program at issue in this litigation.

4. **"INSPIRE"** refers to Defendant Inspire Health Alliance, LLC.

5. **"DAS T&Cs"** refers to the Terms and Conditions for the DAS program that guests were required to accept on or after June 18, 2024.

6. **"IDENTIFY"** when used in reference to a person means to state their full name, last known address, telephone number, and current or last known job title and employer. When used in reference to a document, it means to state the type of document, its date, author, recipient(s), and its current location and custodian.

7. **"2024 POLICY CHANGE"** refers to the modifications to the DAS program's policies, procedures, and eligibility criteria that YOU implemented on or about June 18, 2024, for Disneyland Resort.

8. **"DISABILITY"** has the meaning set forth in 42 U.S.C. § 12102 and, where broader, California Civil Code § 51 et seq. (Unruh), California Government Code § 12926, and any state disability law governing access at a Disney Theme Park.

9. **"ALLEGED ABUSE"** refers to YOUR contention that guests were "abusing DAS," which YOU claim was a reason for the 2024 POLICY CHANGE.

10. **"RELEVANT PERIOD"** refers to the time period beginning on June 18, 2024, to the present and continuing.

SPECIAL INTERROGATORIES-WDPR SET 1 - 3

1

2

3
## REQUESTS FOR SPECIAL INTERROGATORIES, SET ONE:

4

5
**SPECIAL INTERROGATORY NO. 1:**

State the total number of individuals who applied for DAS for Disneyland Park and/or

6

7
Disney California Adventure Park for the period from June 18, 2024, to the present.

**SPECIAL INTERROGATORY NO. 2:**

8

9
Of the total number of individuals identified in your response to Interrogatory No. 1,

state how many were (a) granted DAS and (b) denied DAS.

10

**SPECIAL INTERROGATORY NO. 3:**

11

12
State the total number of individuals who, as a prerequisite to apply for DAS, accepted

the DAS T&Cs between June 18, 2024, and the present.

13

**SPECIAL INTERROGATORY NO. 4:**

14

15
Identify all changes made to the DAS program since January 1, 2015, including the

date, nature of the change, and the reason for such change.

16

**SPECIAL INTERROGATORY NO. 5:**

17

18
State the specific number of guests YOU determined to have engaged in ALLEGED

ABUSE of the DAS program in the two years preceding the 2024 POLICY CHANGE and

19

describe the complete methodology used to arrive at that number.

20

**SPECIAL INTERROGATORY NO. 6:**

21

22
IDENTIFY every person with knowledge concerning the facts, frequency, and nature

guests abusing DAS.

23

**SPECIAL INTERROGATORY NO. 7:**

24

25
IDENTIFY every person who participated in the decision to implement the 2024

POLICY CHANGE.

26

27

28

**SPECIAL INTERROGATORY NO. 8:**

For each DAS application interview conducted since June 18, 2024, IDENTIFY all persons present during the interview, including the applicant, any companions, all WDPR employees, and all INSPIRE employees or agents.

**SPECIAL INTERROGATORY NO. 9:**

Describe in detail all policies, procedures, and training materials provided to YOUR employees or agents regarding the determination of DAS eligibility under the criteria implemented on June 18, 2024.

**SPECIAL INTERROGATORY NO. 10:**

Describe in detail all criteria, guidelines, or instructions YOU provided to INSPIRE for assessing whether a guest has a "developmental disability like autism or similar."

**SPECIAL INTERROGATORY NO. 11:**

State the total number of guests denied DAS since June 18, 2024, who subsequently purchased Genie+ or an individual Lightning Lane pass for use on the same day as their denial.

**SPECIAL INTERROGATORY NO. 12:**

State the total number of guests who, after being denied DAS since June 18, 2024, were offered one of the "alternative accommodations" (Attraction Queue Re-Entry, Rider Switch, or Location Return Times) and IDENTIFY which accommodation was offered.

**SPECIAL INTERROGATORY NO. 13:**

Describe all data YOU maintain relating to guest communications (including emails to disability.services@Disneyland.com, guest.services@Disneyland.com, or any executive) concerning DAS denials since June 18, 2024, and state the total number of such communications YOU have received.

**SPECIAL INTERROGATORY NO. 14:**

Identify all departments, business units, or teams (e.g., Guest Services, Accessibility Strategy, Operations, Legal, Compliance, Technology) that have input into DAS eligibility criteria, queue modifications, or guest interactions, and describe their respective roles.

**SPECIAL INTERROGATORY NO. 15:**

Identify each database, data warehouse, dashboard, or report from which Disney can determine DAS usage metrics (registrations, return time issuance, redemption, average waits experienced by DAS guest's vs standby, party sizes) during the Relevant Period.

**SPECIAL INTERROGATORY NO. 16:**

Describe what medical or disability-related information Disney collects, stores, or processes in connection with DAS eligibility determinations; where and how it is stored; who has access; retention periods; and any de-identification practices.

**SPECIAL INTERROGATORY NO. 17:**

Identify each denial of a material allegation and each special or affirmative defense in your PLEADINGS and for each:

(a)    state all facts upon which you base the denial or special or affirmative defense;

(b)    state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

(c)    identify all DOCUMENTS and all other tangible things, that support your denial or special or affirmative defense, and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**SPECIAL INTERROGATORY NO. 18:**

Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a)    state the number of the request;

(b)    state all facts upon which you base your response;

(c)    state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

(d)    identify all DOCUMENTS and other tangible things that support your response and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

SPECIAL INTERROGATORIES-WDPR SET 1 - 6

**SPECIAL INTERROGATORY NO. 19:**

Identify all persons involved in preparing Disney's responses to these interrogatories and describe the efforts undertaken to locate and obtain responsive information.

Dated: July 25, 2025                    **MCCUNE LAW GROUP, APC**

                                        BY:  *Gavin P. Kassel*

                                        Gavin P. Kassel
                                        Michele M. Vercoski
                                        Yasmin N. Younessi

                                        Attorneys for Plaintiffs'

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

I am employed in the County of San Bernardino, California.  I am over the age of 18 years and not a party to the within action; my business address is 31 West Stuart Ave. Suite 300, Redlands, CA 92374

On July 28, 2025, I served the foregoing document described as **PLAINTIFFS REQUEST FOR SPECIAL INTERROGATORIES SET ONE TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC.**
on the interested parties through their respective attorneys of record in this action, by placing a ☒ true copy or ☐ original thereof enclosed in sealed envelopes addressed as follows:

Marjorie C. Soto Garcia (SBN 313290)
mcsotogarcia@mwe.com
**McDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:      +310 277 4110

Kerry Alan Scanlon (admitted *pro hac vice*)
kscanlon@mwe.com
Jeremy M. White (admitted *pro hac vice*)
jmwhite@mwe.com
**McDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, D.C. 20001-1531
Telephone:      +202 756 8000

Attorneys for Defendant
WALT DISNEY PARKS AND RESORTS U.S., INC.

**METHOD OF SERVICE PURSUANT TO CCP SECTION 1013:**

[ x ]    **(BY ELECTRONIC MAIL) By** electronically mailing a true and correct copy through McCune Law Group Electronic Mail System from da@mccunewright.com to the Email Address(es) noted above per <u>Code of Civil Procedure</u>, Section 1010.6 or an agreement by the parties to accept service by email.  I did not receive, within a reasonable time after transmission, any electronic message that the Email transmission(s) were unsuccessful.

I declare under penalty of perjury under the July 28, 2025 at Redlands, California.

*B R*
_____
Brandi Rodriguez

Michele M. Vercoski [Bar No. 244010]
mmv@mccunelawgroup.com
Yasmin N. Younessi [Bar No. 331327]
ynv@mccunelawgroup.com
Gavin P. Kassel [Bar No. 284666]
sboffice@mccunelawgroup.com
**MCCUNE LAW GROUP, APC**
18565 Jamboree Road, Ste. 550
Irvine, CA 92612
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA MALONE, JASON ARBALLO, STACY HORNE, and MONICA GONZALEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>WALT DISNEY PARKS AND RESORTS U.S., INC., DOES 1 through 50, INSPIRE HEALTH ALLIANCE, LLC, DOES 51-100 inclusive,<br>                    Defendants. | Case No.: 8:25-cv-00562-SRM-DFM<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION (FRCP 34) TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC.**<br><br>**SET ONE** |

**PROPOUNDING PARTY:**   PLAINTIFFS', TRISHA MALONE, JASON ARBALLO, STACY

                              HORNE, and MONICA GONZALEZ

**RESPONDING PARTY:**   DEFENDANT, WALT DISNEY PARKS AND RESORTS U.S.,

                              INC.

**SET NUMBER:**          ONE (1)

**TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC. ("WDPR") AND ITS ATTORNEYS OF RECORD:**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs request that Defendant WDPR produce the documents and electronically stored information ("ESI") described below for inspection and copying at the offices of Plaintiffs' counsel within thirty (30) days of the date of service of this request.

## I. PRELIMINARY STATEMENT

**1. Authority & Scope**. These Requests for Production of Documents are propounded pursuant to Federal Rules of Civil Procedure 26 and 34 and the Court's Scheduling Order. They call for all non-privileged, discoverable documents and electronically stored information ("ESI") within Defendant WALT DISNEY PARKS AND RESORTS U.S., INC.'s possession, custody, or control, including materials held by current or former officers, employees, agents, or third-party vendors.

**2. Duty to Respond, Produce, and Supplement**.

(a) Responses and production (or specific objections) must be served within thirty (30) days of service.

(b) Each response must be signed under oath by a person with knowledge. Any objections must be signed by counsel.

(c) Defendant must seasonably supplement or correct its responses and productions under Rule 26(e).

**4. Definitions Incorporated**. Capitalized terms carry the meanings set forth in Section II (Definitions). References to "Initial Disclosure Witnesses" and "Initial Disclosure Documents" are to the persons and categories listed in Plaintiff's July 10, 2025, Rule 26(a)(1) Initial Disclosures.

REQUEST FOR PRODUCTION OF DOCUMENTS WDPR SET 1 - 2

5. **Form of Production.**

(a) Produce documents as they are kept in the usual course of business or organize and label them to correspond to the request number.

(b) If production is made by electronic image, the original document shall be preserved, and any metadata shall be produced to the extent not protected by privilege.

**6. Privilege Log**. To the extent Defendant withholds any document on the basis of privilege or work product, it shall serve a privilege log identifying, for each withheld document: date, author(s), recipient(s), document type, general subject matter, and basis for withholding.

**7. Meet-and-Confer.** Before moving to compel, the parties shall strictly comply with Local Rules 37-1 and 37-2.

## II. DEFINITIONS

1. **"YOU"** or **"WDPR"** refers to Defendant Walt Disney Parks and Resorts U.S., Inc., including all of its current and former parents, subsidiaries, affiliates, divisions, officers, directors, employees, agents, attorneys, and any other persons or entities acting on its behalf.

2. **"PLAINTIFFS"** refers to Trisha Malone, Jason Arballo, Stacy Horne, and Monica Gonzalez.

3. **"DAS"** refers to the Disability Access Service program at issue in this litigation, as described in your filings.

4. **"INSPIRE"** refers to Defendant Inspire Health Alliance, LLC.

5. **"DOCUMENT"** is used in the broadest sense allowable under the Federal Rules of Civil Procedure and includes, but is not limited to, any and all writings, drawings, graphs, charts, photographs, sound recordings, images, ESI, communications, correspondence, memoranda, notes, reports, studies, analyses, policies, procedures, and guidelines.

6. **"COMMUNICATION"** means any transmission or exchange of information, whether written, oral, or electronic.

REQUEST FOR PRODUCTION OF DOCUMENTS WDPR SET 1 - 3

7.  **"RELATING TO"** means consisting of, referring to, reflecting, concerning, evidencing, or in any way legally, logically, or factually connected with the subject matter of the request.

8.  **"DISABILITY"** has the meaning set forth in 42 U.S.C. § 12102 and, where broader, California Civil Code § 51 et seq. (Unruh), California Government Code § 12926, and any state disability law governing access at a Disney Theme Park.

9.  "**DAS POLICY CHANGE**" means any change (whether written or unwritten) to eligibility criteria, application or registration process, scope of accommodations granted, number or timing of return selections, enforcement, revocation, retraining, or technology platform (e.g., transition from in-person issuance to app-based scheduling; integration with Genie+/Lightning Lane systems).

10. **"RELEVANT PERIOD"** refers to the time period beginning on June 18, 2024, to the present and continuing.

## REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE:

1.  All DOCUMENTS RELATING TO the policies, procedures, rules, and guidelines for the DAS program from its inception to the present.

2.  All training materials, manuals, scripts, flowcharts, or guides provided to any WDPR or INSPIRE employee, agent, or contractor responsible for evaluating guest requests for DAS.

3.  All DOCUMENTS RELATING TO the "individualized conversations" referenced in your reply, including any criteria, factors, or questions used to determine if a guest has the "ability to wait in a conventional queue for an extended period of time."

4.  All DOCUMENTS that identify or describe the "alternative accommodations" offered to guests who are denied DAS, as mentioned in your reply.

5.  All studies, reports, analyses, or data RELATING TO the effectiveness of the "alternative accommodations" referenced in Request No. 4.

**6.** All DOCUMENTS RELATING TO the reasons why Title III's eligibility criteria provision is not applicable to the DAS program.

**7.** All non-privileged COMMUNICATIONS between WDPR and INSPIRE RELATING TO the administration, evaluation, or modification of the DAS program.

**8.** All versions of WDPR's website content, marketing materials, and guest-facing communications from the past five years RELATING TO the DAS program.

**9.** All versions of the terms and conditions for the DAS program that a guest must agree to before applying.

**10.** All internal COMMUNICATIONS RELATING TO the characterization of DAS as a "non-traditional commercial service," a "disability accommodation program," or otherwise.

**11.** All DOCUMENTS that support the assertion that theme park tickets are not "goods" or "services" under the CLRA.

**12.** All DOCUMENTS RELATING TO the website disclosure that DAS "is intended to accommodate Guests who, due to a developmental disability like autism or similar [are unable to wait in a conventional queue for an extended period of time]."

**13.** The contract(s) and any related statements of work between WDPR and INSPIRE.

**14.** All policies, procedures, and protocols RELATING TO the collection, storage, security, and disposal of any information provided by guests during the DAS application process.

**15.** All DOCUMENTS that define the type of information to be collected from guests during the DAS interview, and all DOCUMENTS that support the assertion that this is "non-medical information."

**16.** All DOCUMENTS RELATING TO any actual or potential unauthorized access to or disclosure of information collected during the DAS application process since INSPIRE was retained.

**17.** All DOCUMENTS that support the assertion that information disclosed by PLAINTIFFS was done "voluntarily" and that such voluntary disclosure constitutes a waiver of their claims.

**18.** All DOCUMENTS identifying WDPR's role, if any, in the storage of guest information collected by INSPIRE.

**19.** All employee handbooks and policies RELATING TO employee benefits, perks, and privileges, including but not limited to complimentary park admission.

**19.** All COMMUNICATIONS to WDPR employees regarding the DAS program and their eligibility to use it when visiting the park as a patron.

**20.** All DOCUMENTS that support the assertion that the DAS program is not a "term or condition of... employment" for Plaintiff Gonzalez.

**21.** All non-privileged documents from Plaintiff Gonzalez's personnel file RELATING TO her employment benefits.

**23.** All DOCUMENTS RELATING TO the process by which a guest reviews and accepts the DAS terms and conditions, including the class action waiver.

**24.** All non-privileged internal COMMUNICATIONS and analyses RELATING TO the purpose and enforceability of the DAS class action waiver.

**25.** All DOCUMENTS showing that PLAINTIFFS had a "meaningful choice" of alternative theme park experiences.

REQUEST FOR PRODUCTION OF DOCUMENTS WDPR SET 1 - 6

**26.** All studies, reports, guest feedback, or analyses evaluating the effectiveness, feasibility, and guest satisfaction with the Attraction Queue Re-Entry, Rider Switch, and Location Return Time accommodations for guests with disabilities who cannot wait in conventional queues.

**27.** All DOCUMENTS, including but not limited to interview notes, chat logs, audio/video recordings, and internal notes, RELATING TO Plaintiff Trisha Malone's DAS applications and interviews on or about July 14, 2024.

**28.** All emails sent by or on behalf of Plaintiff Trisha Malone to any WDPR executive or email address on or about July 22, 2024, and all internal COMMUNICATIONS RELATING TO those emails.

**29.** All DOCUMENTS, including but not limited to interview notes, chat logs, audio/video recordings, and internal notes, RELATING TO Plaintiff Jason Arballo's DAS applications and interviews.

**30.** All emails sent by or on behalf of Plaintiff Jason Arballo to any WDPR email address on or about August 9, 2024, and all internal COMMUNICATIONS RELATING TO those emails.

**31.** All DOCUMENTS RELATING TO the reason(s) for the denial of DAS to Plaintiff Jason Arballo, including any reference to his disability not being a developmental disability.

**32.** All DOCUMENTS RELATING TO the reason(s) for the denial of DAS to Plaintiff Tricia Malone, including any reference to his disability not being a developmental disability.

**33.** All DOCUMENTS RELATING TO the reason(s) for the denial of DAS to Plaintiff Stacey Horne, including any reference to his disability not being a developmental disability.

**34.** All DOCUMENTS RELATING TO the reason(s) for the denial of DAS to Plaintiff Monica Gonzalez, including any reference to his disability not being a developmental disability.

**35.** All DOCUMENTS, including but not limited to chat logs, audio/video recordings, and internal notes, RELATING TO Plaintiff Stacy Horne's DAS application and video interview on or about July 10, 2024.

**36.** All emails sent by or on behalf of Plaintiff Stacy Horne to WDPR's Disability Services on or about July 10, 2024, and all internal COMMUNICATIONS RELATING TO those emails.

**37.** All DOCUMENTS RELATING TO Plaintiff Monica Gonzalez's DAS applications and denials on or about August 21, 2024, and April 1, 2025.

**38.** All DOCUMENTS RELATING TO the design, function, and data storage protocols of the online chatbot used in the DAS application process, including how disability category selections are stored and associated with guest identities.

**39.** All non-privileged COMMUNICATIONS RELATING TO the December 19, 2024, CLRA Notice of Violations letter sent on behalf of Plaintiff Trisha Malone.

**40.** All versions of the DAS program description and the DAS Terms and Conditions that were publicly available on any WDPR website immediately before and after January 28, 2025.

**41.** All internal COMMUNICATIONS RELATING TO the decision to modify the language on the WDPR website and remove the word "only" from the DAS description on or about January 28, 2025 (excluding any communications by and between counsel).

**42.** All DOCUMENTS RELATING TO the policy of warning guests that providing false information during the DAS application process could result in a permanent ban and forfeiture of tickets and passes, including any records of this policy being enforced.

**43.** Any and all DOCUMENTS that shows, presents, conveys, illustrates, explains, and evidences that "the percentage of guests holding DAS passes increase from below 5 percent to

REQUEST FOR PRODUCTION OF DOCUMENTS WDPR SET 1 - 8

nearly 20 percent and showed no signs of slowing" as stated in WDPR's Motion to Dismiss and

Motion to Strike Plaintiffs' First Amended Complaint.

**44.** All DOCUMENTS that evidence, quantify, analyze, or describe the alleged abuse of the

DAS program by guests prior to the policy changes that took effect in 2024.

**45.** All internal and external studies, reports, audits, or presentations created or reviewed by

YOU that discuss the alleged abuse of the DAS program.

**46.** All COMMUNICATIONS, including but not limited to meeting minutes, memoranda,

and emails, concerning the decision-making process to modify the DAS policy in 2024 to "stem

the abuse of DAS".

**47.** All DOCUMENTS that IDENTIFY the specific "steps" YOU took to stem the alleged

abuse of DAS, as referenced in YOUR motion to dismiss.

**48.** All DOCUMENTS that define what YOU consider to be "abuse" of the DAS program

and the methods YOU used to identify such abuse prior to the 2024 policy changes.

**49.** All DOCUMENTS that support YOUR contention that YOUR effort to stem abuse

"succeeded".

**50.** All data, analyses, or reports comparing DAS usage demographics before and after the

2024 policy changes that support YOUR claim that DAS is "again being used by those for whom

it was intended".

**51.** All DOCUMENTS, including guest complaints or feedback, received after the 2024

policy change that relate to the effectiveness and fairness of the new DAS eligibility criteria.

**52.** All DOCUMENTS that discuss, analyze, or quantify the alleged threats to the "future of

the program" that the 2024 policy changes were intended to protect against.

REQUEST FOR PRODUCTION OF DOCUMENTS WDPR SET 1 - 9

**53.** All versions of training materials provided to YOUR employees and/or agents of INSPIRE that discuss identifying or preventing abuse of the DAS program.

**54.** All studies, audits, or internal reviews concerning alleged abuse, fraud, or misuse of DAS or predecessor programs, including the date, author, purpose, findings, and any resulting policy changes.

**55.** Any and all training DOCUMENTS Disney provides to cast members regarding disability accommodations in queueing, including DAS eligibility screening, issuing return times, handling guest complaints, and interacting with guests with non-apparent disabilities, and identify all training materials used during the Relevant Period.

Dated: July 28, 2025                    **MCCUNE LAW GROUP, APC**

                                   BY:    *Gavin P. Kassel*

                                        Gavin P. Kassel
                                        Michele M. Vercoski
                                        Yasmin N. Younessi

                                        Attorneys for Plaintiffs'

REQUEST FOR PRODUCTION OF DOCUMENTS WDPR SET 1 - 10

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

      I am employed in the County of San Bernardino, California.  I am over the age of 18 years and not a party to the within action; my business address is 31 West Stuart Ave. Suite 300, Redlands, CA 92374

      On July 28, 2025, I served the foregoing document described as **PLAINTIFFS REQUEST FOR PRODUCTION OF DOCUMENTS SET ONE TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC.**
on the interested parties through their respective attorneys of record in this action, by placing a ☒ true copy or ☐ original thereof enclosed in sealed envelopes addressed as follows:

Marjorie C. Soto Garcia (SBN 313290)
mcsotogarcia@mwe.com
**McDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:      +310 277 4110

Kerry Alan Scanlon (admitted *pro hac vice*)
kscanlon@mwe.com
Jeremy M. White (admitted *pro hac vice*)
jmwhite@mwe.com
**McDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, D.C. 20001-1531
Telephone:      +202 756 8000

Attorneys for Defendant
WALT DISNEY PARKS AND RESORTS U.S., INC.

**METHOD OF SERVICE PURSUANT TO CCP SECTION 1013:**

[ x ]    **(BY ELECTRONIC MAIL) By** electronically mailing a true and correct copy through McCune Law Group Electronic Mail System from da@mccunewright.com to the Email Address(es) noted above per Code of Civil Procedure, Section 1010.6 or an agreement by the parties to accept service by email.  I did not receive, within a reasonable time after transmission, any electronic message that the Email transmission(s) were unsuccessful.

REQUEST FOR PRODUCTION OF DOCUMENTS WDPR SET 1 - 11

I declare under penalty of perjury under the July 28, 2025 at Redlands, California.

*B R*
_____
Brandi Rodriguez

Michele M. Vercoski [Bar No. 244010]
mmv@mccunelawgroup.com
Yasmin N. Younessi [Bar No. 331327]
ynv@mccunelawgroup.com
Gavin P. Kassel [Bar No. 284666]
sboffice@mccunelawgroup.com
**MCCUNE LAW GROUP, APC**
18565 Jamboree Road, Ste. 550
Irvine, CA  92612
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA MALONE, JASON ARBALLO, STACY HORNE, and MONICA GONZALEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALT DISNEY PARKS AND RESORTS U.S., INC., DOES 1 through 50, INSPIRE HEALTH ALLIANCE, LLC, DOES 51-100 inclusive,<br><br>Defendants. | Case No.: 8:25-cv-00562-SRM-DFM<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS (FRCP 36) TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC.,**<br><br>**SET ONE** |

**PROPOUNDING PARTY:**   PLAINTIFFS', TRISHA MALONE, JASON ARBALLO, STACY

                                HORNE, and MONICA GONZALEZ

**RESPONDING PARTY:**   DEFENDANT, WALT DISNEY PARKS AND RESORTS U.S.,

                                INC.

**SET NUMBER:**            ONE (1)

REQUEST FOR ADMISSIONS SET 1 - 1

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiffs request that Defendant WDPR admit or deny the truth of the matters set forth below within thirty (30) days of the date of service.

## I. INSTRUCTIONS

A. Each request should be answered separately and completely in writing under oath.

B. If you object to a request, the reason for the objection must be stated. If you can admit a part of a request, you must specify the part admitted and deny the remainder.

C. An answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission.

D. These requests shall be deemed continuing in nature, requiring you to supplement your responses if you obtain further or different information.

## II. DEFINITIONS

1. **"YOU"** or **"WDPR"** refers to Defendant Walt Disney Parks and Resorts U.S., Inc., including all of its current and former agents, employees, and any other persons or entities acting on its behalf.

2. **"DAS"** refers to the Disability Access Service program at issue in this litigation.

3. **"INSPIRE"** refers to Defendant Inspire Health Alliance, LLC.

4. **"T&Cs"** refers to the Terms and Conditions for the DAS program.

5. **"Lightning Lane"** refers to the expedited queues used by guests who purchase the "Genie+" service and/or individual ride access.

REQUEST FOR ADMISSIONS SET 1 - 2

**6. "DISABILITY"** has the meaning set forth in 42 U.S.C. § 12102 and, where broader, California Civil Code § 51 et seq. (Unruh), California Government Code § 12926, and any state disability law governing access at a Disney Theme Park.

**7.** "**DAS POLICY CHANGE**" means any change (whether written or unwritten) to eligibility criteria, application or registration process, scope of accommodations granted, number or timing of return selections, enforcement, revocation, retraining, or technology platform (e.g., transition from in-person issuance to app-based scheduling; integration with Genie+/Lightning Lane systems).

**8. "2024 POLICY CHANGE"** refers to the modifications to the DAS program's policies, procedures, and eligibility criteria that YOU implemented on or about June 18, 2024, for Disneyland Resort.

**9. "ALLEGED ABUSE"** refers to YOUR contention that guests were "abusing DAS," which YOU claim was a reason for the 2024 POLICY CHANGE.

**10. "COMMUNICATION"** means any transmission or exchange of information, whether written, oral, or electronic.

## REQUESTS FOR ADMISSIONS, SET ONE:

**Request for Admission No. 1:**

Admit that on or about June 18, 2024, YOU implemented modifications to YOUR DAS policy.

**Request for Admission No. 2:**

Admit that after June 18, 2024, the DAS T&Cs stated the service was "intended to accommodate only Guests who, due to a developmental disability like autism or similar, are unable to wait in a conventional queue for an extended period of time."

**Request for Admission No. 3:**

Admit that after January 28, 2025, YOU modified the language on YOUR public website to state that "DAS is intended to accommodate Guests who, due to a developmental disability like autism or similar..." are unable to wait in a conventional queue.

**Request for Admission No. 4:**

    Admit that YOU contracted with INSPIRE to assist in assessing guest eligibility for DAS.

**Request for Admission No. 5:**

    Admit that nurse practitioners from INSPIRE participated in live video or in-person interviews with guests applying for DAS.

**Request for Admission No. 6:**

    Admit that YOUR stated reason for denying Plaintiff Jason Arballo's DAS application was that he "wasn't born with his disability."

**Request for Admission No. 7:**

    Admit that to apply for DAS, a guest is required to accept the DAS T&Cs.

**Request for Admission No. 8:**

    Admit that the DAS T&Cs presented to guests include a class action waiver.

**Request for Admission No. 9:**

    Admit that the DAS T&Cs do not contain a provision requiring arbitration of disputes.

**Request for Admission No. 10:**

    Admit that during DAS interviews, applicants were asked how they manage lines at the grocery store, the airport, or the DMV.

**Request for Admission No. 11:**

    Admit that during DAS interviews, applicants were asked, "What does a 'meltdown' look like for you?"

**Request for Admission No. 12:**

    Admit that YOU instruct guests who are denied DAS to email their concerns to YOU.

**Request for Admission No. 13:**

    Admit that YOU denied Plaintiff Trisha Malone's application for DAS on or about July 14, 2024.

**Request for Admission No. 14:**

Admit that Plaintiff Trisha Malone informed YOU that she and her daughter have a severe, airborne anaphylactic allergy to latex.

**Request for Admission No. 15:**

Admit that YOU denied Plaintiff Jason Arballo's application for DAS on or about August 9, 2024.

**Request for Admission No. 16:**

Admit that Plaintiff Jason Arballo informed YOU that he has service-connected disabilities, including a traumatic brain injury and PTSD.

**Request for Admission No. 17:**

Admit that YOU denied Plaintiff Stacy Horne's application for DAS on or about July 10, 2024.

**Request for Admission No. 18:**

Admit that Plaintiff Stacy Horne informed YOU that she has multiple autoimmune disorders, including Lupus and Sjogren's.

**Request for Admission No. 19:**

Admit that Plaintiff Monica Gonzalez is an employee of WDPR.

**Request for Admission No. 20:**

Admit that YOU provide complimentary theme park admission passes to employees like Plaintiff Monica Gonzalez as a benefit of employment.

**Request for Admission No. 21:**

Admit that YOU denied Plaintiff Monica Gonzalez's applications for DAS on or about August 21, 2024, and April 1, 2025.

**Request for Admission No. 22:**

Admit that guests utilizing DAS return times are directed into the same Lightning Lane queues used by guests who purchase Genie+.

**Request for Admission No. 23:**

Admit that the "Rider Switch" accommodation requires a disabled guest to be separated from members of their party while those members wait in the conventional queue.

**Request for Admission No. 24:**

Admit that at certain times, the "Location Return Time" accommodation is not available for all attractions, including *Star Wars: Rise of the Resistance*.

**Request for Admission No. 25:**

Admit that INSPIRE is a "healthcare provider" as defined in the First Amended Complaint.

**Request for Admission No. 26:**

Admit that through the DAS application process, YOU collect individually identifiable information regarding guests' mental or physical conditions.

**Request for Admission No. 27:**

Admit that in or around July 2024, WDPR experienced a data breach involving internal communication systems.

**Request for Admission No. 28:**

Admit that on or about December 19, 2024, YOU received a CLRA notice of violations letter from counsel for Plaintiff Trisha Malone.

**Request for Admission No. 29:**

Admit that on or about December 19, 2024, YOU received a written notice sent on behalf of Plaintiff Trisha Malone pursuant to California Civil Code § 1782(a).

**Request for Admission No. 30:**

Admit that the written notice referenced in Request for Admission No. 29 specified alleged violations of the CLRA.

**Request for Admission No. 31:**

Admit that the written notice referenced in Request for Admission No. 29 demanded that YOU take corrective action.

**Request for Admission No. 32:**

Admit that within 30 days of receiving the written notice referenced in Request for Admission No. 29, YOU did not provide the specific corrective actions demanded in the notice.

**Request for Admission No. 33:**

Admit that prior to January 28, 2025, YOUR public website stated that DAS was intended for "only Guests who, due to a developmental disability like autism or similar..." were unable to wait in a conventional queue.

**Request for Admission No. 34:**

Admit that on or about January 28, 2025, YOU modified the language on YOUR public website describing the DAS program.

**Request for Admission No. 35:**

Admit that the modification referenced in Request for Admission No. 34 included removing the word "only" from the description of guests for whom DAS is intended.

**Request for Admission No. 36:**

Admit that the modification referenced in Request for Admission No. 34 occurred after YOU received the written notice referenced in Request for Admission No. 29.

**Request for Admission No. 37:**

Admit that in the legal proceeding referred to by Plaintiffs as *A.L. v. Walt Disney Parks & Resorts US, Inc.*, YOU advanced the position that YOUR "DAS Card is a full and complete accommodation for cognitively disabled guests, no matter how severe or mild their conditions."

**Request for Admission No. 38:**

Admit that in the *A.L.* case, YOUR position that the DAS was a "full and complete accommodation" was used to oppose the plaintiffs' request for additional accommodations.

**Request for Admission No. 39:**

Admit that prior to May 20, 2024, YOUR written policy stated that DAS was intended to assist guests "who have difficulty tolerating extended waits in a conventional queue environment due to a disability."

**Request for Admission No. 40:**

Admit that the DAS policy language in effect prior to May 20, 2024, did not explicitly limit eligibility to guests with developmental disabilities.

**Request for Admission No. 41:**

Admit that under the DAS policy language in effect prior to May 20, 2024, individuals with disabilities other than developmental disabilities could be considered eligible for the service.

**Request for Admission No. 42:**

Admit that on or about May 20, 2024 (for Walt Disney World) and June 18, 2024 (for Disneyland), YOU changed the written eligibility criteria for the DAS program.

**Request for Admission No. 43:**

Admit that the current DAS eligibility language specifies the service is for guests who, "due to a developmental disability such as autism or a similar disorder, are unable to wait in a conventional queue for an extended period of time."

**Request for Admission No. 44:**

Admit that YOUR current DAS eligibility criteria is more restrictive than the criteria in effect prior to May 20, 2024.

**Request for Admission No. 45:**

Admit that YOU do not maintain specific data on the number of guests YOU concluded were "abusing" the DAS program.

**Request for Admission No. 46:**

Admit that a guest with a disability other than a developmental disability, such as Multiple Sclerosis or a service-connected PTSD, may be incapable of waiting in a conventional queue for an extended period of time.

**Request for Admission No. 47:**

Admit that under the policy implemented in 2024, a guest who was genuinely incapable of waiting in a conventional queue due to a disability that was not a developmental disability like autism was denied DAS.

1

2

3

4

5    Dated: July 28, 2025                    **MCCUNE LAW GROUP, APC**

6

7                                        BY:    *Gavin P. Kassel*

8                                           Gavin P. Kassel
                                            Michele M. Vercoski
9                                           Yasmin N. Younessi

10                                          Attorneys for Plaintiffs'

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

      I am employed in the County of San Bernardino, California.  I am over the age of 18 years and not a party to the within action; my business address is 31 West Stuart Ave. Suite 300, Redlands, CA 92374

      On July 28, 2025, I served the foregoing document described as **PLAINTIFFS REQUEST FOR ADMISSIONS SET ONE TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC.**
on the interested parties through their respective attorneys of record in this action, by placing a ☒ true copy or ☐ original thereof enclosed in sealed envelopes addressed as follows:

Marjorie C. Soto Garcia (SBN 313290)
mcsotogarcia@mwe.com
**McDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:    +310 277 4110

Kerry Alan Scanlon (admitted *pro hac vice*)
kscanlon@mwe.com
Jeremy M. White (admitted *pro hac vice*)
jmwhite@mwe.com
**McDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, D.C. 20001-1531
Telephone:    +202 756 8000

Attorneys for Defendant
WALT DISNEY PARKS AND RESORTS U.S., INC.

**METHOD OF SERVICE PURSUANT TO CCP SECTION 1013:**

[ x ]    **(BY ELECTRONIC MAIL) By** electronically mailing a true and correct copy through McCune Law Group Electronic Mail System from da@mccunewright.com to the Email Address(es) noted above per Code of Civil Procedure, Section 1010.6 or an agreement by the parties to accept service by email.  I did not receive, within a reasonable time after transmission, any electronic message that the Email transmission(s) were unsuccessful.

1    I declare under penalty of perjury under the July 28, 2025 at Redlands, California.

2

3                                                          *B R*

4                                                  _____
                                                         Brandi Rodriguez
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28