Michele M. Vercoski [Bar No. 244010]
mmv@mccunelawgroup.com
Yasmin N. Younessi [Bar No. 331327]
ynv@mccunelawgroup.com
Gavin P. Kassel [Bar No. 284666]
sboffice@mccunelawgroup.com
**MCCUNE LAW GROUP, APC**
18565 Jamboree Road, Ste. 550
Irvine, CA  92612
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA MALONE, JASON ARBALLO; and each of them<br><br>               Plaintiffs,<br><br>   v.<br><br>WALT DISNEY PARKS AND RESORTS U.S., INC.; DOES 1 through 50, INSPIRE HEALTH ALLIANCE, LLC, DOES 51-100 inclusive,<br><br>              Defendants. | Case No.: 8:25−cv−00562−SRM−DFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY**<br>Date: October 8, 2025<br>Time: 1:30 PM<br>Place: 350 W. First Street<br>       Courtroom 5D<br>       Los Angeles, CA 90012<br><br>Judge: Serena R. Murillo<br>Action Filed: February 10, 2025<br>Action Removed: March 21, 2025 |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................1

II.   LEGAL STANDARD .........................................................................1

III.  ARGUMENT.......................................................................................3

    A. WDPR's Motion to Dismiss Is Not Clearly Dispositive Because It Raises Fact-Intensive Questions.
        3

    B. WDPR's Pending Motion Is Not Potentially Dispositive of the Entire Case, Nor of the Issues at Which Discovery Is Aimed
        6

    C. WDPR's Motion to Dismiss Is Not Likely to Succeed
        9

    D. A Stay Would Unfairly Prejudice Plaintiffs While WDPR Would Suffer No Hardship from Proceeding with Discovery
        10

IV. CONCLUSION ...................................................................................14

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*,
  900 F.3d 1270 (11th Cir. 2018)........................................................... 6

*Activision Publishing, Inc. v. Warzone.com, LLC*,
  2022 WL 22960724, (C.D. Cal.Feb. 15, 2022)..................................... 12

*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir. 1975)................................................................ 2

*Clinton v. Jones*,
  520 U.S. 681 (1997)............................................................................. 2

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962)................................................................ 2

*Crandall v. Teamsters Loc.* No. 150,
  2025 WL 1652063 (E.D. Cal. June 11, 2025) ............................... 6, 7, 8

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007).............................................................. 2

*Eisenhower Medical Center v. Superior Court*,
  226 Cal. App. 4th 430 (2014) .............................................................. 9

*Galvan v. Walt Disney Parks & Resorts*, U.S., Inc.,
  425 F.Supp. 3d 1234 (C.D. Cal. 2019) ................................................ 7

*Gray v. First Winthrop Corp.*,
  133 F.R.D. 39 (N.D. Cal. 1990)........................................................... 2

*Hamilton v. Rhoads*,
  2011 WL 5085504 (N.D. Cal. Oct. 25, 2011)....................................... 9

*In re Nexus 6P Prods. Liab. Litig.*,
  2017 WL 3581188 (N.D. Cal. Aug. 18, 2017) ..................................... 2

*Landis v North American Co.*,
  299 U.S. 248 (1936)............................................................................ 2

*Quezambra v. United Domestic Workers of America*,
  2019 WL 8108745 (C.D. Cal. Nov. 14, 2019)...................................... 4

*Salas v. Whirlpool Corp.*,
  2024 WL 6050054 (C.D. Cal. Apr. 1, 2024) ...................................... 11

*SSI (U.S.), Inc. v. Ferry*,
  2021 WL 4812952 (C.D. Cal. May 25, 2021) .................................. 7, 8

*Top Rank, Inc. v. Haymon*,
  2015 WL 9952887, (C.D. Cal. Sep. 17, 2015)................................... 12

i

Rules

Fed. R. Civ. P. 1 ................................................................................................ 2

ii

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Walt Disney Parks and Resorts U.S., Inc. ("WDPR") seeks an extraordinary remedy: a complete halt to all discovery in this case. WDPR asks this Court to accept its self-serving prediction that its pending Motion to Dismiss will dispose of all claims, and on that basis alone, deny Plaintiffs access to the evidence needed to prove their case. This is a transparent attempt to delay proceedings and gain a tactical advantage. A stay of discovery is not a routine procedural matter; it is a drastic measure that should be granted only in the clearest of cases. This is not such a case.

Far from being a clear case for dismissal, WDPR's motion is built on the faulty premise that Plaintiffs' claims can be adjudicated in a factual vacuum. The central questions in this litigation—the reasonableness of WDPR's disability accommodations, the truthfulness of its public statements under the CLRA, its role in handling confidential medical data under the CMIA, and the enforceability of its class action waiver—are all deeply intertwined with factual issues. These are not abstract legal questions to be decided on the pleadings; they require discovery. To grant a stay would endorse WDPR's strategy of using a motion as both a sword to attack the complaint and a shield to hide the evidence. This would severely prejudice Plaintiffs by denying them the ability to build the factual record needed to defeat the motion and vindicate their rights. For these reasons, the motion should be denied.

### II.    LEGAL STANDARD

To evaluate whether to stay an action, the Court must weigh competing interests that will be affected by the grant or refusal to grant a stay, including: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues,

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY

proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The party seeking a stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis Landis v North American Co.*, 299 U.S. 248, 255 (1936).

A stay of discovery is the exception, not the rule. The Federal Rules of Civil Procedure contemplate a liberal discovery process to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. While Rule 26(c) permits a court to issue a protective order to stay discovery for "good cause," the party seeking such a stay bears a heavy burden of making a "strong showing" that a stay is warranted. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

As the Supreme Court explained, "If there is even a fair possibility that the stay ... will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity." *Landis v North American Co.*, 299 U.S. 248, 255 (1936). The decision whether to grant or deny a stay is committed to the discretion of the Court. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

Further, the moving party must show that the pending motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed," and that the motion "can be decided absent additional discovery." *See, e.g., In re Nexus 6P Prods. Liab. Litig.*, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017). A stay is not appropriate where discovery is necessary to address the arguments raised in the dispositive motion. Furthermore, the fact that a motion to dismiss has been filed is, by itself, insufficient to demonstrate good cause for a stay. *See Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND
RESORTS U.S. INC.'S MOTION TO STAY

### III.    ARGUMENT

### A. WDPR's Motion to Dismiss Is Not Clearly Dispositive Because It Raises Fact-Intensive Questions.

WDPR's primary argument for a stay is that its Motion to Dismiss will resolve the entire case. This is pure speculation. The motion raises several issues that cannot be resolved without a factual record.

First, WDPR argues its Unruh Act claims fail because Plaintiffs received a reasonable accommodation. Whether an accommodation is "reasonable" is a classic fact-intensive inquiry. It cannot be decided on the pleadings. Discovery is necessary to determine how the DAS program and the so-called "alternative accommodations" actually function, the training provided to employees who administer them, and whether they are effective in providing meaningful access to guests with Plaintiffs' specific disabilities. (*See, e.g.*, RFP 1-5, 26).

Second, WDPR's motion injects its own factual narrative asserting that the 2024 policy change was a necessary and successful effort to "stem the abuse of DAS." (WDPR's Motion to Dismiss Plaintiff's First Amended Complaint 1:1 - 2:9).). Plaintiffs are entitled to discovery on these self-serving assertions. WDPR has put the facts surrounding this alleged "abuse" at issue, and it cannot now hide behind a motion to stay to avoid producing the data, communications, and analyses that purportedly support its claims. (*See* RFP 43-52).

Third, WDPR's arguments on the CLRA, CMIA, and FEHA claims also depend on factual determinations. Whether WDPR made misleading statements about the DAS program (CLRA), its precise role in collecting and storing guest medical data (CMIA), or whether park access was a term of employment for Plaintiff Gonzalez (FEHA) are not pure questions of law. Likewise, the enforceability of the class action waiver requires a factual inquiry into procedural unconscionability and whether Plaintiffs had a "meaningful choice." (*See* RFP 10-12, 14-15, 19-21, 23-25).

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY

WDPR's reliance on *Quezambra v. United Domestic Workers of America*, 2019 WL 8108745 (C.D. Cal. Nov. 14, 2019), is unpersuasive because it ignores the critical distinction between a motion to dismiss that raises purely legal issues and one that is dependent on factual questions. In fact, the *Quezambra* court itself quotes the Ninth Circuit's rule that "[D]iscovery at the pleading stage is only appropriate where factual issues are raised by a Rule 12(b) motion." *Id*. at *2. That is precisely the situation here. Because WDPR's motion to dismiss raises these and other fact-intensive issues, that are not "potentially dispositive" in the way required to justify a stay.

For example, WDPR Motion to Dismiss asserts specific factual contentions such as: "Given the tens of millions of guests of all abilities who visit the Disneyland Resort (and the Walt Disney World Resort) every year, WDPR has extensive experience matching the required needs of its guests with disabilities with one or more of the available accommodations offered by the parks" (WDPR's Motion to Dismiss Plaintiff's First Amended Complaint 1:1 - 2:9).

WDPR's Rule 12(b) further injects extra-pleading facts by trying to frame its entire 2024 policy change around its contested narrative that "the percentage of guests holding DAS passes increased from below 5 percent to nearly 20 percent" due to widespread abuse. (See *Id.* at 2:13-21). It further adds factual disputes about Plaintiffs' individual needs, asserting that, "[l]ike the vast majority of guests with disabilities, plaintiffs do not require DAS and can be successfully accommodated by other services." (*Id*.).

WDPR's Rule 12(b) motion also describes purported operational facts about DAS, contending: "DAS allows anyone holding this pass and their entire immediate family to completely skip the normal standby lines on every ride and attraction, for the entire length of their park visit" (*Id*.). It further states: "DAS allows the passholder to make an electronic reservation and then return to enter the ride through

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY

1    the Lightning Lane, which is an expedited queue that typically takes about ten

2    minutes. (*Id*.). WDPR then tries to explain that a "guest never has to wait in the

3    normal standby queue—which on the most popular attractions can take up to two

4    hours or more …—and while DAS guests are waiting virtually, they can avail

5    themselves of many other attractions throughout the park." (*Id*.).

6        These sweeping claims are empirical and hinge on evidence solely within

7    WDPR's control—attraction-by-attraction wait-time logs, Lightning Lane

8    throughput and return-time data, party-size and companion rules, and training and

9    enforcement materials showing how cast members implement DAS in practice.

10   Without discovery into those metrics and policies, the Court would be forced to

11   credit WDPR's disputed narrative at the pleading stage—the very result *Quezambra*

12   counsels against when a Rule 12(b) motion turns on factual issues.

13       WDPR then claims Plaintiffs "were offered various accessibility services to

14   accommodate their specifically identified needs" and "were not offered DAS

15   because they do not qualify for that service and do not require it" (p. 12), followed

16   by the assertion that "like the vast majority of guests with disabilities, plaintiffs do

17   not require DAS and can be successfully accommodated by other services WDPR

18   offers." *Id*.

19       Next, WDPR's contradictory statements regarding who DAS is intended for

20   clearly warrants discovery. Specifically, on one hand WDPR presently insists in

21   their 12(b) motion that "Started in October 2013, DAS is designed for a very limited

22   population of guests who due to a **developmental disability** like autism or similar,

23   are incapable of waiting in a conventional queue for an extended period of time,"

24   and that "[g]uests who qualify for DAS have significant deficits in functioning and

25   severely problematic behaviors in multiple areas of their lives … [which] render

26   them unable to wait in extended queues without the potential for severe meltdowns,

27   elopement, and/or physical aggression." (*Id*. at 1:14-21).

28

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND
RESORTS U.S. INC.'S MOTION TO STAY

1       Yet, this flatly contradicts WDPR's previous position where it claimed "its

2  DAS Card is a full and complete accommodation for **cognitively disabled guests**,

3  no matter how severe or mild their conditions." *A.L. by & through D.L. v. Walt*

4  *Disney Parks & Resorts US, Inc.,* 900 F.3d 1270, 1291 (11th Cir. 2018). By

5  anchoring its current position that DAS "Started in October 2013" and asserting

6  DAS was from inception for a "very limited" group with "a developmental disability

7  like autism," WDPR contradicts its post October 2013 representation to the Eleventh

8  Circuit that "its DAS Card is a full and complete accommodation for cognitively

9  disabled guests, no matter how severe or mild their conditions," underscoring the

10  need for discovery into when and why Disney narrowed the program's stated scope.

11       Finally, WDPR seeks to pre-emptively decide factual questions about its guest

12  interviews by characterizing questions like how guests "manage lines at the grocery

13  store" as a permissible "individualized inquiry" rather than an improper solicitation

14  of medical information.

### B. WDPR's Pending Motion Is Not Potentially Dispositive of the Entire Case, Nor of the Issues at Which Discovery Is Aimed

17       WDPR fails to satisfy that their motion is "potentially dispositive of the entire

18  case" in the manner required by law because it hinges on resolving fact-intensive

19  questions, not pure questions of law. *Crandall v. Teamsters Loc.* No. 150, No. 2:23-

20  CV-03043-KJM-CSK, 2025 WL 1652063, at *1 (E.D. Cal. June 11, 2025) WDPR

21  asks the Court to accept its own disputed version of the facts—such as its claim that

22  the DAS policy change was a successful effort to "stem abuse" and that its alternative

23  accommodations are "reasonable." These are factual conclusions, not legal

24  certainties that can be decided on the pleadings alone. Because the motion's success

25  depends on a factual record that has yet to be developed, its potential to dispose of

26  the case is merely speculative and does not meet the first prong.

27       Second, and for similar reasons, WDPR fails the second prong because its

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND
RESORTS U.S. INC.'S MOTION TO STAY

motion cannot be "decided absent additional discovery." *Id*. The core of WDPR's motion requires the Court to make factual determinations about the reasonableness of its accommodations, the truthfulness of its public statements, and its role in handling guest data. Plaintiffs have served targeted discovery aimed at the very evidence needed to rebut WDPR's factual assertions and support their own claims. Deciding the motion without this discovery would force the Court to accept WDPR's self-serving narrative as true, which is improper at this stage. Because discovery is essential to fairly adjudicate the issues WDPR itself has raised, the second prong is not met.

WDPR's reliance on *Galvan v. Walt Disney Parks & Resorts*, U.S., Inc. 425 F.Supp. 3d 1234 (C.D. Cal. 2019) is misplaced for three independent reasons. First, posture: *Galvan* was decided on a fully developed summary-judgment record, where the court credited unrebutted evidence that the plaintiffs either were not disabled or already had "comparable" access via alternatives (e.g., wheelchairs, FastPass), and that the specific request for blanket priority access would fundamentally alter park operations. *Id*. at *1239 Those fact-heavy determinations cannot be imported to a Rule 12 challenge to well-pled allegations here. Second, facts: unlike *Galvan*, Plaintiffs do not demand a universal "skip-the-line" privilege like the Plaintiffs in *Galvan* sought; they plausibly allege that Disney's intake rules and practices for DAS operate as screening criteria that deny equal, effective access to a subset of disabled guests, and that Disney's proposed alternatives are not equally effective for their disabilities—issues *Galvan* did not resolve. Third, *Galvan* does not announce a categorical bar to Unruh/ADA claims whenever a park offers some accommodation; it simply applied the ADA's reasonableness/necessity framework to a different record and request. Put simply, *Galvan* underscores that these are fact questions—not a basis to dismiss Plaintiffs' claims at the pleadings stage.

WDPR's reliance on *SSI (U.S.), Inc. v. Ferry*, 2021 WL 4812952 (C.D. Cal.

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND
RESORTS U.S. INC.'S MOTION TO STAY

May 25, 2021), is misplaced because, like the other cases it cites, the court's decision to grant a stay was based on a set of facts and legal arguments that are fundamentally different from ours. The motion to dismiss in *SSI* was based on two key arguments that are not present here: (1) forum non conveniens, which argues that the case should be heard in another country (in that case, Russia), and (2) failure to join indispensable parties, which argued that the case could not proceed without certain individuals who were located in Russia. These are threshold procedural and jurisdictional issues that can often be decided without discovery into the merits of the case.

In stark contrast, WDPR's motion to dismiss turns on several fact-intensive disputes (what was asked and recorded in DAS intake, how any class-waiver assent was captured and by whom, and the nature and scope of Inspire's role) that cannot be resolved in a discovery vacuum; Plaintiffs have not conceded discovery is unnecessary; and the prejudice from delay (including ephemeral ESI loss, fading memories, and compressed class-certification preparation) is substantial. Even under *SSI*'s *Landis*/*CMAX* framework and its two-part test, WDPR cannot show both potential dispositiveness and resolvability without discovery, making *SSI* inapposite.

WDPR's citation to *Crandall v. Teamsters Local No. 150*, 2025 WL 1652063 (E.D. Cal. June 11, 2025), is similarly unavailing. The court in *Crandall* stayed discovery pending a motion for judgment on the pleadings because the motion presented a pure question of law that could be decided without any factual development. The court there explicitly found that "the pending motion does not require additional discovery for its resolution." *Ibid.*

That is the opposite of the situation here. WDPR's motion is laden with disputed factual assertions that go to the heart of Plaintiffs' claims. Unlike in *Crandall*, the pending motion here cannot be fairly decided without discovery into WDPR's internal policies, its factual basis for the DAS program changes, and the

8

**PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY**

actual experiences of disabled guests.  WDPR's motion to dismiss tees up fact-laden issues (what was asked and recorded in DAS intake, how any class-waiver assent was obtained and by whom, and the scope of Inspire's role) that cannot be resolved on the pleadings alone; Plaintiffs have specifically identified the targeted discovery needed to oppose. Because WDPR cannot show both potential dispositiveness and resolvability without discovery, *Crandall* provides no support for a blanket stay here.

WDPR's citation to *Hamilton v. Rhoads*, 2011 WL 5085504 (N.D. Cal. Oct. 25, 2011), is also misplaced. The court in *Hamilton* granted a stay because the defendants' motion to dismiss was based on failure to exhaust administrative remedies, a threshold legal issue that required no discovery. That situation is the inverse of the case at hand, where WDPR's motion is grounded in disputed factual claims about the reasonableness of its accommodations and the necessity of its policy changes, making discovery essential to a fair adjudication of the motion itself.

The discovery Plaintiffs have propounded is not a "fishing expedition"; it is targeted at the very foregoing issues WDPR raised in their Rule 12(b) motion, making a stay prejudicial to Plaintiffs.

**C. WDPR's Motion to Dismiss Is Not Likely to Succeed**

WDPR's motion is not "potentially dispositive" because its success hinges on resolving disputed factual questions, not pure issues of law. Additionally, the cases cited by WDPR in their Rule 12(b) motion are not applicable to the Plaintiffs' case, particularly since most were decided on an evidentiary summary judgment.

WDPR's reliance on *Eisenhower Medical Center v. Superior Court*, 226 Cal. App. 4th 430 (2014) fails to support its contention that the CMIA only applies to healthcare providers. *Eisenhower* concerned theft of demographic/administrative identifiers (names, MRNs, DOBs, partial SSNs) that, standing alone, did not reveal medical history, conditions, or treatment. Here, the FAC alleges Plaintiffs were

9

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY

required to disclose concrete, sensitive details—actual medical histories, diagnoses (e.g., severe allergies, PTSD, Lupus, Sjögren's), symptoms, functional limitations, and treatments—information inherently tied to identified individuals applying for DAS and thus squarely within CMIA's definition of "medical information" (medical history, mental or physical condition, or treatment) and the category *Eisenhower* recognized as protected when coupled with identifiers. Disney's "individualized inquiry" label does not change that; questions like "What does a 'meltdown' look like for you?" solicit medical information far beyond demographics, distinguishing this case from *Eisenhower*. (FAC ¶ 31.)

### D. A Stay Would Unfairly Prejudice Plaintiffs While WDPR Would Suffer No Hardship from Proceeding with Discovery

The balance of hardships weighs heavily against a stay. Plaintiffs will be significantly prejudiced if they are not allowed to proceed with discovery. The delay will prolong the resolution of their claims and directly impede their ability to meet the deadlines in this Court's Standing Civil Trial Order, issued on July 14, 2025. The Order establishes a clear and demanding schedule that requires Plaintiffs to diligently pursue discovery to meet critical deadlines, including:

- Class Certification Discovery Cut-Off: January 23, 2026

- Fact Discovery Cut-Off: August 19, 2026

- Initial Expert Disclosure: August 26, 2026

A stay would choke the front-end steps necessary for class certification, such as identifying custodians and obtaining representative data on denials and numerosity. It also creates a serious risk of evidence loss. Electronically stored information may be overwritten on rolling retention schedules, and witnesses' memories will fade. Extending deadlines later cannot restore deleted data or lost recollections.

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY

WDPR's reliance on *Arcell v. Google LLC 2022*, WL 16557600 (N.D. Cal. Oct. 21, 2022)is off-point. *Arcell* addressed whether antitrust plaintiffs were entitled to discovery to cure a threshold pleading defect (antitrust injury) and dismissed the complaint while noting the needed facts were not "peculiarly within [Google's] knowledge," so discovery was unnecessary at that stage. This case is the opposite posture and substance: WDPR seeks a blanket, pre-ruling stay while injecting fact disputes about how DAS actually operates, what criteria and scripts are applied, what data is collected and how it is used, and whether Disney's proposed alternatives are equally effective—all issues that are within WDPR's exclusive control and cannot fairly be tested without discovery.

*Arcell* also says nothing about the two-prong stay standard; WDPR's motion is not "potentially dispositive of the entire case," and in any event it cannot be decided without the very operational facts WDPR puts at issue. In fact, the *Arcell* court, explicitly found that amending the plaintiffs' complaint would not be futile and granted the plaintiffs leave to do so. As such, a prophylactic stay would invert Rule 12's plausibility standard and reward unilateral characterizations of disputed facts; the Court should deny it.

WDPR's reliance on *Salas v. Whirlpool Corp.* 2024 WL 6050054 (C.D. Cal. Apr. 1, 2024) is misplaced. In *Salas*, the court granted a brief stay only after finding that both prongs of the governing test were satisfied (the motion to dismiss was potentially dispositive and could be decided without additional discovery) or, alternatively, that a preliminary peek suggested the motions would likely be granted; the court also noted a lack of prejudice because deadlines could be adjusted. That thin, case-specific order—arising from a consumer-warranty dispute—does not create any presumption in favor of stays, and it reaffirmed the very standards WDPR fails to meet here. WDPR's motion is not case-dispositive of Plaintiffs' multi-statute claims, and—by WDPR's own factual assertions about how DAS is designed, what

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY

criteria and scripts are used, and whether proposed alternatives are equally effective—it cannot be decided without targeted discovery. Nor is prejudice absent: delaying discovery prolongs ongoing denial of equal access and injunctive relief, risks staleness of operational evidence and witness recollections, and undermines timely class and merits development unique to ADA/Unruh claims—harms that an extension of deadlines does not cure. On these facts, *Salas* supports denying, not granting, a stay.

WDPR's reliance on *Activision Publishing, Inc. v. Warzone.com, LLC* 2022 WL 22960724, (C.D. Cal.Feb. 15, 2022) is inapposite. *Activision* reiterates that there is no automatic stay of discovery and applies the familiar two-part test—whether the pending motion is potentially case-dispositive and whether it can be decided without additional discovery—before balancing hardships. There, the court stayed discovery because the motion to dismiss raised a purely legal bar (the *Rogers* First Amendment test) that could resolve the action and did not require any factual development; the opposing party also failed to show prejudice from a short delay. Here, WDPR's motion is neither clearly dispositive of the entire action (which includes ADA/Unruh, CLRA, CMIA, and FEHA claims) nor resolvable without discovery, given Disney's own fact-laden assertions about how DAS is designed and administered, what criteria/interview scripts are used, and whether proposed alternatives are equally effective. Plaintiffs, by contrast, face concrete prejudice from a stay: ongoing denial of equal access, delay in needed injunctive relief, and the risk that operational evidence and witness recollections will grow stale. Targeted discovery tailored to those core issues promotes, rather than impedes, judicial efficiency. *Activision* thus supports denying—not granting—a blanket stay on these facts.

Lastly, WDPR's citation to *Top Rank, Inc. v. Haymon* 2015 WL 9952887, (C.D. Cal. Sep. 17, 2015) does not help it. That order arose in a heavyweight antitrust

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY

suit, where courts uniquely stress front-loaded, "potentially enormous" discovery costs and often pause discovery briefly until the pleadings are settled; the court there emphasized the requests were already voluminous and costly, the prejudice was "extremely limited" because the dismissal hearing was less than three weeks away, and—after a preliminary peek—it found many dismissal arguments "compelling." *Id.* *2. None of those predicates fits here: this is not an antitrust case; Plaintiffs seek targeted, proportional discovery tied to WDPR's own fact-laden defenses; prejudice from delay is concrete (ESI loss, fading memories, compressed class work); and there is no comparable, short, calendar-certain pause with a near-immediate ruling. *Top Rank* reflects a discretionary, case-specific balance that turned on antitrust-specific burdens and a near-term hearing—not a blanket rule supporting WDPR's requested stay in this fact-intensive ADA/consumer case.

Unlike the cases cited by WDPR, a stay would materially prejudice Plaintiffs and the putative class. Class-certification work depends on early, foundational tasks—identifying custodians, mapping ESI systems, and obtaining representative data on denials, queue times, alternatives offered, and numerosity/commonality—so freezing discovery now compresses the schedule later and harms Plaintiffs' ability to make a full record. Meanwhile, ESI is dynamic: chat tools, ticketing systems, and third-party platforms auto-delete or overwrite on rolling schedules; audio/video and intake logs may be archived or lost; and witness memories fade—extensions cannot restore deleted data or recollection. The risk is heightened for non-parties like Inspire, whose personnel or systems may change, yet a stay would prevent Plaintiffs from issuing and enforcing targeted preservation and collection steps.

A stay would also hinder access to documents and testimony necessary to prosecute Plaintiffs' claims and meet the deadlines in this Court's Standing Civil Trial Order. (Vercoski Decl. ¶ 6.) This is not mere inconvenience; a stay creates a serious risk of the permanent loss of ephemeral electronically stored information,

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND
RESORTS U.S. INC.'S MOTION TO STAY

such as chat logs and communications on short-retention schedules, and impairs witness recollection over time. (*Id.*) Early discovery is crucial on key topics such as WDPR's and Inspire's DAS eligibility criteria, employee training and scripts, the precise role of Inspire in guest interviews, the functionality and limitations of Disney's alternative queue accommodations, and internal communications or analyses concerning the June 2024 policy changes. (*Id.*)

WDPR's boilerplate offer to simply extend future deadlines does nothing to cure these harms. (Vercoski Decl. ¶ 7.) An extension cannot recover lost ESI, and it fails to address the practical challenges of coordinating third-party discovery from entities like Inspire or scheduling numerous depositions of percipient and Rule 30(b)(6) witnesses once discovery finally resumes. (*Id.*)

The current posture is a direct result of WDPR's deliberate strategy to obstruct and delay. As early as April 2025, Plaintiffs sought to schedule the parties' Rule 26(f) conference, only to be rebuffed by WDPR's counsel, who declared discovery a "waste of time and resources" and expressly threatened to "have no choice but to file a motion to stay" if Plaintiffs proceeded. (Vercoski Decl. ¶ 3, Ex. B.) In contrast to WDPR's obstruction, Plaintiffs have diligently pursued this case, propounding initial written discovery. WDPR's response—consisting largely of boilerplate objections and a refusal to provide information pending this motion—further underscores its goal of delay. (Vercoski Decl. ¶ 8, Ex. A.)

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Walt Disney Parks and Resorts U.S., Inc.'s Motion to Stay Discovery.

///
///
///

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND
RESORTS U.S. INC.'S MOTION TO STAY

DATED: September 17, 2025

Respectfully submitted,

**MCCUNE LAW GROUP, APC**

By: */s/ Michele M. Vercoski*

Michele M. Vercoski
Yasmin N. Younessi
Gavin P. Kassel
Attorneys for Plaintiffs

15

PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September 2025, I electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT WALT DISNEY PARKS AND RESORTS U.S. INC.'S MOTION TO STAY** with the Clerk of the Court using CM/ECF system.

I also certify the document and a copy of the Notice of Electronic Filing was served on the following CM/ECF participants:

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
MARY A. SMIGIELSKI
E-Mail: Mary.Smigielski@lewisbrisbois.com
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Telephone: 312.345.1718
Facsimile: 312.345.1778

SHANE SINGH
E-Mail: Shane.Singh@lewisbrisbois.com
GRACE E. MEHTA
E-Mail: Grace.Mehta@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Defendant,
INSPIRE HEALTH ALLIANCE, LLC

Marjorie C. Soto Garcia
mcsotogarcia@mwe.com
**McDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200

Los Angeles, CA 90067-3206
Telephone: +310 277 4110
Facsimile: +310 277 4730

Kerry Alan Scanlon
kscanlon@mwe.com
Jeremy M. White
jmwhite@mwe.com
**McDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, D.C. 20001-1531
Telephone: +202 756 8000
Facsimile: +208 756 8087

Attorneys for Defendant
WALT DISNEY PARKS AND
RESORTS U.S., INC

*/s/ Dominique Alferez*

Dominique Alferez

2
CERTIFICATE OF SERVICE